Lori Barker on behalf of the defendant, insurers, and appellants, please support. We're here today on a case where Crescent seeks business interruption losses related to Hurricane Ida under a surplus line. Is this the first of these multiple cases to get on appeal or not? No, there was one that was heard about a month back. It's not yet ruled on by a different panel. That's Town of Benton? Correct, but that one did not have, of course, the same text that we're going to talk about here, and it also didn't have the same procedural background, which we'll talk about. And this case, as I've just indicated, is about whether Crescent can use a state statute to breach its contractual agreement to arbitrate and circumvent the convention. And here, what I've kind of alluded to, is we're in a little bit of a different situation because there are three connected concepts that are going to require Crescent to arbitrate. First is going to be the text of the agreement or agreements, however you want to look at it as a court, the mandates of the convention, and equity. At bottom, the convention applies, and because the convention applies, you can't just provide those foreign insurers, and you have to look at all of the issues through the lens of the convention's enforcement and through the foreign carrier's eyes. And when you do that, the answer to this is clear, and that is that the district court should be reversed, and that arbitration should be granted for all insurers. Well, what do you do with the clause that I'm assuming the insurance companies wrote, that these are separate contracts between each insurer? So, you got to my first issue a little bit quicker, so I'll jump ahead. So, all it requires, all that is required for something to be enforceable, an arbitration agreement to be enforceable under the convention, is a written agreement to arbitrate. I get all that, but this policy says these are separate contracts between these insurers, but the district court did was treat these as four contracts, two foreign insurers, compelled arbitration, this is on the reconsideration motion, compelled arbitration, two domestic insurers, Louisiana law, can't compel arbitration, can't use an equitable estoppel, therefore going to be litigated. Well, I understand you do, but again, if they're separate contracts, and each insurer has a contract with its insured, what the two domestic insurers have are separate contracts with a domestic insured, and Louisiana law says you can't compel arbitration. So, I disagree with that a little bit. Let's say we go to the back, and we take this one policy, and we copy it four times, and I've got four stacks. If I pick up the policy that has the foreign insurers on it, the one that we're all agreeing we can compel arbitration under the convention. Are you, what you're saying is that it's an integrated contract, are you not? So, that is one argument, and Bufkin certainly found that, but what I am saying is just a little bit more. Even if we accept that they're separate contracts, if you look at the text of the arbitration agreement, which itself is enforceable under the convention, it says that the named insured and the insurers does not say anything about the policy, and insurers is defined in this policy to include all of the insurers. And insurers S and for N. Correct, but insurers is a different thing. Well, I don't see. It's not the same thing. Well, what led to my interest was 70-some page policy. It has an allocation endorsement, and it has a several liability endorsement, and each of those say, to the extent of provision of the policy, or previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. So, it seems to me, at least arguable, that these clauses, allocation and severability, which state the percentages and show that it's several liability on the part of the insurers, would not have existed or been necessary if there were four separate contracts. I agree with you. I thought you would. You made the argument and you replied. Yes. What I am saying is more to Judge Wilson's question, even if we go down that road and say we're going to go in the back and we're going to make it four copies. Insurers in this policy is a defined term, and it is defined at record citation 115, and it is defined to mean all of the insurers on that allocation endorsement. And that is at record citation 108. But then what does that clause mean, that these are separate contracts? Well, nothing in connection with the arbitration clause, because the arbitration clause itself is enforceable under the convention, and that says that Crescent is going to arbitrate all its disputes with all the insurers. And so, when you read it that way, the foreign contracts include the domestic insurers, and those are enforceable, and you can flip it vice versa. The domestic contract includes an arbitration agreement that itself is enforceable under the convention, and that agreement includes the foreign insurers. So, that's enforceable under the convention. And so, the actual text supports what we're saying, that this is enforceable under the convention. And so, now that we know and we're discussing that the convention applies, either Judge Jones suggested that it's a seamless coverage agreement, you know, placed under one account number, investigated together, all of that, or if we're just looking at the text of the arbitration agreement, what does it mean? Well, the convention itself mandates enforcements of agreements when they fall under them. And the Supreme Court acknowledged and shared that there were concerns that courts would see arbitration as undesirable and disregard those agreements. So, Congress passed Chapter 2 of the FAA to give federal court jurisdiction. And for many of these reasons, circuit courts, including this one in Safety National, agreed that state statutes can't impede the convention. And if the district court is not reversed, that's exactly what's happening here. Well, there is a split in the east. I gather it's mostly eastern district cases. There's a number of cases on each side of this issue, right? Yes, and that's kind of the point, right? The whole point of the convention is to have consistent and uniform interpretation. That's why federal courts have jurisdiction. And in your sister circuits, when they've decided, and to your point, Judge Jones, the district courts seem to split the most who are equitable estoppel. Backing up a little bit, I've just explained to you why you don't even need to get to equitable estoppel. Well, we can't, can we, with regard to the domestic insurers? The Louisiana Supreme Court has said it doesn't apply. So, not surprisingly, I would challenge that as well. So, there's a couple of things. First of all, the Louisiana Supreme Court didn't say anything about the text of this agreement. The language they were looking at on those sort of questions was slightly different. And they presumed that the convention does not apply to those domestic contracts. I've explained to you that our agreement says insurers, and the insurers are domestic and foreign. And the requirements of the convention, the only four requirements of the convention, are met on either of those. And also, that's state law, right? So, we are going to take the position, and other circuits who have looked at this, have specifically applied federal common law, not state common law, to these questions. Intergen, Argonaut, those are two circuits. There's more cited in our brief. And to Judge Jones's point, some of the district court, eastern district cases, that went through a choice of law analysis under Boyle, kind of came out the same way. Federal law applies. And the reason that they reached this conclusion is they did a Boyle analysis, which is not done either by the district court in this case, or by Crescent. What the district court, and what Crescent does, is they assume that state law is going to apply. So, Calcasieu-Parrish applies. They don't do the Boyle analysis. What they do is they rely on pieces such as Arthur Anderson and Dewey. Both of those are red herrings here. They don't answer your question. Arthur Anderson, not a convention case. It's an FAA case. And GE, even more to the point, specifically told us that they were not deciding whether state or federal common law applied. So, to suggest that GE imported some holding from an FAA case, when it's specifically telling us that's not what we're doing, we're sending this back to the district court for them to decide, it goes against those cases, and it goes against the mandate of the convention that says you shall enforce, and you shall not allow a state statute to impede. As this court recognized in Todd, while courts have admittedly largely relied on the same common law contracts and agency principles to determine who must arbitrate under the convention in the FAA, the convention's mandate that shall apply in the text of the convention itself creates a body of federal substantive law, and that's going to displace inconsistent state law where it's implicated. You're still talking about equitable estoppel, right? Correct. And equitable estoppel, thank you, Judge Jones, that is not the only basis. So, you can get to enforcement of this two ways. Either way, you get to the same place. You can agree that this is one contract or multiple contracts that all implicate the convention. If you agree with that, we know safety national, many, many cases consistently hold that the state statute can't implicate it. Equitable estoppel is an additional ground. It's related, but in my opinion, you don't have to go there. You just look at the text of the agreement and the convention itself. Perhaps you're realizing that you really can't get around the convention. Crescent attempts to remove the convention from the discussion by saying that underwriters have no right to participate in the appeal and that they may dismiss underwriters. Bufkin tells us that they're free to sue or not sue whoever they want, but that doesn't change the court's analysis here. There's also just some practical problems. First of all, we're going forward in arbitration where the case against the foreign carriers is actually coming has not been dismissed. The insurers here, they issued the policy together. They investigated the policy together. They reached a coverage decision. But I'm still troubled by this clause that says there's separate contracts. The insurance companies just get to have their cake and eat it too. The arbitration agreement is enforceable under the convention separately. Against the foreign insurers? Against all of them because they all implicate the foreign insurers if you look at the definition of insurers. The separate contracts speak to the policy being interpreted as separate. Nothing about the insurers in other ways. And those are specific to liability. So, you know, if one insurer goes defunct or dismissed 32%, perhaps that 32% would go away. But those insurers still have agreed to this form collectively. They're still going to investigate it collectively, particularly in states like Louisiana where you have a continuing duty to adjust. I don't know how you separate it. And I think that's why courts who have looked at this, like Bufkin. Well, look, Bufkin, all this has intuitive appeal, at least to me, since I wrote Bufkin. But the Louisiana Supreme Court handed us our hat on Bufkin. And it was an equitable estoppel case. We didn't answer the whole, there were ten policies or something like that there. We alighted that issue because it was a lot more complicated. There were also games being played by the plaintiffs because they had dismissed the foreign as soon as they figured out that they were going to, and all that sort of thing. We put that to the side also. And we said, here, the claims of Bufkin, the claims are intertwined. The claims are not going to be separable. All the arguments that you're making about how the arbitration, the right to arbitration would basically be rendered meaningless if you could litigate parallel, et cetera. And the Louisiana Supreme Court said it doesn't matter. They're wrong. The federal court is wrong. Equitable estoppel doesn't apply when you're talking about a domestic insurer and a domestic insured. And if you do as the district court did and separate these contracts like the contract says, they're separate, then that's where you are, isn't it? I disagree. Well, I know you do, but I'm just having trouble following how this works. So if you look at the actual arbitration laws, it says insurer and insurers. So it's a separate contract except where it's not a separate contract, but it's not identified that way. We just have to figure that out now that we're here. Well, if you look at the text, I think it's supported. But even beyond that, Brixton and the Louisiana Supreme Court. Does the arbitration clause have insurer, parenthesis, S, close parenthesis? Or does it say straight up all the insurers? It has it the first way, but that is a defined term. And when you look at the definition, it includes all of the insurers prior to the allocation of divorce money. And that defined term supersedes the fact that the clause that says these are separate contracts? It doesn't supersede it. I think the clause that says it's separate contracts is not in conflict with that, and you can read them harmoniously. Because that provision that you're talking about says you need to read policies where liability is discussed, or policy where liability is discussed is separate. Where does the Louisiana Supreme Court purport? They don't discuss these issues. It's purely domestic, right? They were purely answering questions about Louisiana law certified to it. They were not deciding the issues that are before this court. They didn't do a Boyle choice of law analysis, under which, you know, Louisiana Supreme Court, the whole fact that they're saying you can't enforce arbitration suggests that there is a conflict between an identifiable federal policy or interest enforcing the convention and the application of a state law. That's the whole point. Well, what about this point number three in the summary, domestic insurer may not use equitable estoppel to enforce arbitration via a foreign insurer's policy? So, first of all, the foreign insurer has an agreement that includes the domestic insurers. We went through that in the text. And I've taken the position here that this text supports that the domestic insurers also include the foreign and directly fall under the convention itself. So that's a way to distinguish that. Also, that is purely under Louisiana law using a Louisiana anti-arb statute to invalidate the use of equitable estoppel, which is exactly what Safety National tells us. So you're saying the Louisiana Supreme Court is wrong? Not that they're wrong. They're correct for the answer they asked, you know, under Louisiana law. Your job is to do this choice of law analysis and decide that federal law and the IRB should apply. In police jury, the Calcasieu-Parrish case, weren't they dealing with a policy that had a text like this? It was slightly different. I don't want to speak to their policy because I'm not involved in the case, but I did put them side by side. The text is not the same. And the Louisiana Supreme Court— Does it have a provision saying that it's construed as separate contracts? It does. It does not have the definition of insurers that I'm discussing, and the Louisiana Supreme Court was not asked to look at that issue. But, I mean, that's why they were asked the question in the first place, were they not? It was in response to Bufkin, and the Supreme Court says we got it wrong. In Bufkin, we were dealing with a similar set of overlaid, seamless coverage agreements and all those kinds of things, and that's what came up in Calcasieu-Parrish also. Agreed, they're similar. So, I mean, these are not operating in a vacuum is my point. This is not some brand new case that's here. These are very similar policies that are percolating up throughout various courts. Similar, but the text does matter in each and every case. Of course. All right, you have a chance for a rebuttal. Mr. Andrew. May it please the Court. Judge Jones, you asked a question about whether this case or these issues have been addressed. You need to speak up. May it please the Court. Your Honor, you asked a question about has this issue been addressed in earlier cases by the Supreme Court. Venton was mentioned. Venton also had attached to it or consolidated with it seven other cases. So, it wasn't just Venton that was considered. So, it's under submission to another panel right now. Yes, ma'am. Consolidated with seven other cases at that time. That same day, I think it's Mayflower, was argued also which involved the same issues. So, that panel has technically, I guess, eight cases that it's decided. Okay, thank you. Now, with regard to Your Honor's questions, specifically Judge Wilson, about is it separate policies. Then, as Your Honor knows, this Court said that the Supreme Court of Louisiana is the ultimate decider of issues, state issues involving state law. Here, that's exactly what the Supreme Court did in Calcasieu. And in Calcasieu, the Supreme Court said domestic insurers do not have an opportunity to arbitrate. Well, but if they're bound by a clause, an arbitration agreement that also includes a foreign insurer, they are bound to arbitrate the whole kit and caboodle. In other words, the convention does apply in that case. I mean, you only get to the answer that implicates the Supreme Court of Louisiana's opinion if these are separate contracts and basically there are four arbitration clauses, not one unified arbitration clause. Yes, sir. And specifically with regard to that, Your Honor pointed out that the issue is equitable estoppel. That's what would connect. No, no, no. The issue is not equitable estoppel. If there's one arbitration clause that binds all four insurers and the insured, then you're all going to arbitration because the convention would govern as to all four insurers, domestic and foreign. Right? Well, not necessarily, Your Honor. Not if the Supreme Court comes in in the meantime and says that domestics, if there's an arbitration clause in a policy that affects domestic insurers, it's null and void because we have strong policy in Louisiana. Well, Louisiana law can't vitiate the convention that is a treaty that's a supreme law over the state law. Louisiana law has currency if you've got a domestic insurer and a domestic insurer, correct? There's no foreign insurer. In Louisiana law, the positive law says you can't arbitrate those disputes. Those are void. And you can't get to equitable estoppel to compel even if there is a foreign insurer out there with some other arbitration agreement. They say that the Buffington case that we reached the opposite conclusion applied equitable estoppel. They say that's wrong. But if you've got one arbitration agreement that basically implicates all the convention's considerations, then all the insurers, domestic and foreign, can be compelled. Well, that would be if there's just one policy. Well, that's what I'm getting at. You heard counsel opposite say there is one, not just one policy, there's one arbitration agreement even if there are four policies. Well, except that if there's four separate policies, right, they're not connected, and they happen to have the same arbitration clause. Well, as to the domestics, that individual arbitration clause is not allowed under Louisiana law. Well, what do you do with it? It has four different policies. All right. So I questioned counsel opposite about that clause. But what about Judge Jones' point about these endorsements, which would not be necessary if these were separate policies? The endorsements, if they were separate, well, the endorsements make the policies separate. Because the endorsements specifically say they take care of you. They say several, and they say allocation. And at least in the common law jurisdictions, you have joint and several liabilities. Several liability means each party to that contract is only responsible for a portion of the contractual obligation. Several. I think it means the same in Louisiana, right? Well, except, Your Honor, it does say that, except that the policy goes further, that the endorsements do. At every endorsement, it says the endorsement changes the policy. Right. Please read it carefully. To the extent a provision of the policy, and I'm right now at the several liability clause. Right. To the extent a provision of the policy or previous endorsement is inconsistent with an express provision of this endorsement, the endorsement controls. Not the policy. It goes on to say the liability of each of, the liability of an insurer under this contract is several and not joint. The others insurers party to this contract. An insurer is liable only for the portion of liability that is underwritten. An insurer is not jointly liable for the portion of liability underwritten by another insurer. So the parties, the insurers went to a great extent to say we're separate. But they didn't stop there, Your Honor. They also went to the allocation endorsement. And in the allocation endorsement, same beginning, this endorsement changes the policy. Please read it carefully. To the extent a provision of this policy or a previous endorsement is in condition with an express provision of this endorsement, this endorsement controls. And as Judge Wilson asked, my friend across the aisle, these are separate policies with separate policy numbers. So they're to be read separately. I don't see, what makes them separate policy numbers? VPC, VRX, VUX, those alone when you've got this long series of digits afterwards that are exactly identical? Well, but they're predicated on different contract numbers, different contracts of insurance, Your Honor. So while the policy itself, the 1 through 49, is attached to all four policies, the contracts that created them are separate, which means they're separate policies. Well, but do you concede that the language of the arbitration agreement uses the word insurers, plural, as defined by the policy to include all four insurers? Yes, sir. But again, we have to read that four separate times. Well, but why wouldn't that mean four separate agreements to include all four insurers, which implicates the two foreign insurers, which would implicate the convention, which means the whole thing is arbitrable, as the district court initially found? Well, to break that down, what Judge Fallin said was, these are separate policies. And when read separately, you have to separate the domestic and foreign insurers. I understand what the district court – I understand how the district court went through and reached its result. I'm asking a slightly different question. If the arbitration clause includes all four insurers, putting that arbitration clause in four separate contracts would still implicate all four insurers because each insurer, domestic and foreign, would be agreeing to arbitrate in toto, together, which would basically implicate the convention, which means it could be compelled as to all four. Well, except that it can't, by Your Honor's very question, be considered in toto. It's got to be considered separately because there's four separate policies. So if four – But if it's the same arbitration agreement and the arbitration agreement envisions all four insurers and the insured all agreeing to arbitration, doesn't that get you to the convention? Well, except that, I don't think so, Your Honor, with all due respect. The reason that it doesn't is because with four separate policies, the policies with regard to the domestics must be considered and applied, calculated. Well, wait – well – It says that domestics don't get that opportunity. The several liability clause next to last paragraph says – I think it's next to last – although reference is made at various points in this clause to this contract in the singular, where the circumstances so require this should be read as reference to contracts in the plural. Yes, ma'am, and that was my point in bringing up on the page prior to it that there are four separate contracts. Four separate contracts. No, where the circumstances so require this should be read as reference to contracts in the plural. That could refer back to the arbitration clause. Well, it could, but then the way that Preston interprets that and the way that based on Calcasieu, if you read this – four separate policies with regard to the domestics, it's – the arbitration clause can't be considered. But you agree, though, that if a domestic insurer enters an agreement that includes an arbitration clause, but the agreement envisions performance on foreign soil, significant connection to a foreign country, foreign insurers working with the domestic insurer, some interest that would implicate the convention, that domestic insurer can be compelled to arbitrate regardless of Louisiana law. Well, with regard to that, Your Honor, that's a great question. And the brief of our opponents, our friends on the other side of the aisle, don't bring up one word, much less phrase, much less sentence, that suggests that there's some international need for uniformity with regard to domestic insurance. No, that's not the point. That's not the point. The point is if what a domestic insurer is insuring implicates a foreign interest, implicates some other part of the convention, that domestic insurer can be compelled to arbitrate regardless of state law because state law can't supersede a treaty. I'm not suggesting that it is superseding a treaty, Your Honor. But if you take that to its ultimate conclusion, well, does that mean that France and Spain that also have some portions of civilian law suddenly have to arbitrate when their laws suggest that – Those are nations, not states. I mean – Parties to the convention, Your Honor. Does that mean that those nations that are party to this convention somehow now have to ignore however many hundreds of years of civilian law – I'll bet. – where they don't like equitable assets and don't use it as a last resort so that now they're suddenly bound by – Well, the problem with this is we're not talking about a province or a department in a foreign country like Louisiana is a part of the United States. This is United States treaty, United States law, and its relationship with state law that is – the national law is obviously supreme. The point is that if these domestic insurers are otherwise wrapped up in some implication, some interest that implicates the convention, they can be compelled to arbitration. Well, not according to Calcashie, Your Honor. Well, we're talking around each other. Let me ask you a different – I'm trying to talk about that. I'm being confused and confusing as well, but I've got a different question. Regardless of all of this that we're talking about, whether the domestic insurers can be compelled to arbitration, should the district court not have stated this matter in litigation until the arbitrations concluded? I don't think so, and I'll tell you why it shouldn't have been stated. Lloyds – and we mentioned this in our brief, and we filed a motion early on – Lloyds appealed the district court's ruling despite the fact that it won. It was a prevailing party, meaning Judge Fallon – Well, let's take this – let's put this in terms of a simple comparative negligence case where you have two defendants, and you can't put hands on one of them right away because they're out of state or the witness is not readily accessible or something. But you have two defendants, and they arguably both have liability. So you sue the one that's right down the street, and you're going to the jury. You think the absent defendant is going to pay no attention to that? Well, perhaps or perhaps not. I don't know the fact of the matter. All right, but the facts are exactly the same. The contract is exactly the same. The claim was exactly the same. The investigation was exactly the same. So whichever side goes first, the other side is going to have to essentially monitor the entire thing. Well, monitoring, Your Honor – and I thank you for that question – monitoring an appeal is different than taking hold of it. Then, you know, Lloyds is going to have to hire counsel to sit through the entire case, right? Yes, ma'am. More than that, they're going to have to submit their witnesses. Yeah, they're going to have witnesses. They're going to have to produce documents. They're going to have to participate in the litigation because they can't just pretend. Well, when the domestic insurer's corporate representatives are deposed, for example, they have no part in that. It doesn't matter what those representatives say. They're going to have to show up and participate as though they were parties right here, right now. I mean, how do you get beyond that? Well, by suggesting to Your Honor that we moved to have the arbitration state just the way – Well, but there's a preference for arbitration. But you will have had testimony on the record in discovery in Louisiana, and I assume that in London they'll allow such – you'll take steps to preserve it so it can be used in the arbitration in London. Well, but we've had – Maybe. We've had discovery in – The arbitration will be sort of a pro forma situation. But beyond that, more esoteric question. The district court in its order, page 1415, denying the stay, cited the factors to evaluate whether the disputes involve the same facts. I mean, I think that's clear they do here. The claims asserted in the arbitration litigation must be inherently inseparable. Of course they are because this is seamless coverage. The litigation must have a critical impact on the arbitration. So the district court cites these factors from the waste management case, but then the district court denies the stay based on balance of hardships, further delay, and undue prejudice. That's erroneous just by looking at the district court's order, isn't it? Well, Your Honor, to at least a practical extent, we don't disagree. My point is we try to do the same thing. We try – Well, but it's not the same thing to stay the arbitration versus the litigation pending arbitration because in federal law there is a preference for arbitration. Well, I think that the reason that Judge Fallon denied it is based on a coinbase where the case is automatically stayed while there is an appeal regarding arbitrability. I think that it was a coinbase basis. I don't read that in the court's order. The court refused to stay the litigation pending arbitration based on the balance of hardships, further delay, and undue prejudice. I mean, that's what I see. But those aren't the factors that the district court was supposed to weigh in determining whether to stay these claims or not. These cases have – the claims have been stayed for whatever – coinbase is what I imagine the reason because we have not been able to take one deposition. We're technically not at the district court right now. But no, we're talking about apples and oranges. I'm talking about the stay pending arbitration. I get that we're on appeal and therefore things shouldn't be going in the district court right now. You can't very well do that until this is resolved, these questions. But the point is the district court's order denied a stay of the litigation otherwise pending the arbitration. And my question, again, is wasn't that erroneous based on the district court's own recitation of the factors and then failure to apply them? Well, I can't speak for what Judge Fallon's reasons were except to say – Well, he says it. Except to say that coinbase was my understanding for the reason for the stay. And Your Honor is suggesting not staying, even considering taking the domestics prior to the appeal? Is that the question? No. Then that's where we're missing each other, Judge, and I'm not trying to. But it's my understanding that based on coinbase, we haven't been able to take a single deposition. We ask that the – ask Deloitte with the panel that the arbitration be stayed so that we can wait and find out what this court does with this appeal. Well, suppose we ruled tomorrow in your favor. Just suppose. And so then the court's order would be that the arbitration is stayed and the litigation goes forward, right? Yes, ma'am. And what Judge Wilson is saying is that the district court did not apply the legal factors to make that determination. And when the district court errs legally, it is an abuse of discretion. With regard to the stay? Yes, sir. Well, with regard to that, Your Honor, the question that comes to mind right away, because I don't have a dog in that hunt except to say this. We were, in effect, and have been staying at the district court level. Whether it's coinbase or not, whatever the reason for it was, we have not been allowed to do a thing – to do anything. We tried to file a motion to dismiss Lloyds from the litigation. And that decision, or that motion, has been stayed and not been allowed to be heard. And everything that we've heard is that it's based on, or analyzes that it's coinbase basis for the stay, because this is an interlocutory. If that answers your question. I want to go back and read, though. Well, I'm sorry. Your time is up. So, I'll give you, if you have one concluding brief remark. I would just suggest, as Judge Wilson was asking my friend across the aisle, if you read the separate contract, or the separate endorsements, the allocation endorsement, the third full paragraph on 2 of 2, it looks like 129 of the Record on Appeal, specifically communicates that these are separate policies and that evidence of coverage does not constitute any manner or form a joint certificate. The evidence of coverage consists of separate sections of composite insurance for all underwriter Lloyds combined, and separate policies issued by the insurance companies, all identified. And then if you go to the service of suit, Louisiana, there's three different agents for process and three different states on the first page. And on the second page, with regard to arbitration or not, it has written the defendants with its endorsements saying, we can move forward with a lawsuit in the state of Louisiana. And then I would end with, there is no, the arbitration agreement, the policy itself, are not signed by all the parties. They're signed by one for all of them. Your time is up. Thank you, ma'am. All right. Thank you. Ms. Barker. Thank you. At the end, Crescent raised one of several kind of ancillary issues that sort of got thrown in for the first time on appeal. I don't think any of those were appropriately before this court. The original motion to compel arbitration was unopposed. There was a motion to reopen and reverse based on Calcasieu Parish being a change in the law. Calcasieu Parish doesn't talk about the signature requirement. It doesn't talk about any of those other things. I haven't heard a whole lot of questions from the court, but I did want to touch on that briefly. We also believe the positions that they've raised, in addition to being inappropriate, are foreclosed by controlling precedent. All that's in our brief. But I did want to mention that. Judge Wilson, you asked about Judge Bowne's denial of the stay. I absolutely think that is incorrect under the law. I also found it really interesting that, you know, he acknowledged the hardship of litigation on the foreign carriers when he was denying that stay. And so, you know, in that, the district court, in denying the arbitration, is kind of admitting the whole point that we have here, that the convention and the foreign insurer's rights are necessarily impacted. That's also what gives the foreign insurers standing at this appeal. They have an arbitration agreement. The arbitration agreement says that the insured is going to arbitrate all disputes with all insurers. Insurers includes their domestic partners. And so, if the insured here, Crescent, is allowed to litigate against their domestic partners, not only are they going to be required to participate because it's the same language, it's the same actions. You know, it's interpretation of their text, interpretation of their actions, all of those things. That is fundamentally changing the arbitration agreement that is in their policy. It's enforceable under the convention. And that we know under safety national, Louisiana law cannot impede. That's what's happening here. And for that reason, the district court's case should be reversed. Do you have questions for me? No, ma'am. Thank you. Thank you.